# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: Richard C. Demonica<br>         Debtor. | Case No.  06-00094<br><br>Chapter 13<br><br>Judge Manuel Barbosa |

## MEMORANDUM OPINION SUSTAINING THE
## CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

This matter is before the Court on the objection to confirmation brought by Glenn Stearns, the standing chapter 13 trustee (the "Trustee").  The Trustee is represented by Attorney Carolyn A. Suzzi.  Richard C. Demonica, the debtor (the "Debtor"), is represented by Attorney Kerrie Neal of Zalutsky & Pinsky.  For the reasons set forth below, the Trustee's objection to confirmation is sustained.

## JURISDICTION

This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## INTRODUCTION

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective on October 17, 2005.  One of the most significant modifications is the new § 707(b), commonly referred to as the "means test." The means test is akin to a formula that incorporates figures used by the IRS.  In order to implement the use of the means test, BAPCPA requires the debtor to file a statement of

current monthly income. Fed. R. Bankr. P. 1007(b)(1). The Interim Rules and Official Forms Implementing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[1] contain three forms to comply with the reporting and calculation of current monthly income. Form B22 has three versions, A, B and C, for use in Chapters 7, 11 and 13, respectively. "The forms contain a series of line entries, divided into columns providing for separate entries by the debtor and the debtor's spouse." (Form B22 committee note para. B.) "The forms provide entry lines for each of the specified expense deductions under the IRS standards, and instruction on the entry lines identify the web pages where the relevant IRS allowances can be found." *Id.*

In the context of a Chapter 7 petition, the means test is used to determine whether the filing creates a presumption of abuse. Form B22 is used in every Chapter 13 case to determine whether a debtor earns below or above median family income. Median family income is defined as the median family income both calculated and reported by the Bureau of the Census. 11 U.S.C. § 101(39A).[2] When a debtor's income is below the median family income, the applicable commitment period for confirmation

---

[1] The Interim Rules and Official Forms Implementing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and committee notes can found on the Court's website at *www.ilnb.uscourts.gov.*

[2] Section 101(39A) provides: The term 'median family income' means for any year—
(A) the median family income both calculated and reported by the Bureau of the Census in the then most recent year; and
(B) if not so calculated and reported in the then current year, adjusted annually after such most recent year until the next year in which median family income is both calculated and reported by the Bureau of the Census, to reflect the percentage change in the Consumer Price Index for All Urban Consumers during the period of years occurring after such most recent year and before such current year.
11 U.S.C. § 101(39A).

of the plan pursuant to § 1325(b)(4) is three years.[3] In addition, "disposable income" is defined as "current monthly income" less "amounts reasonably necessary to be expended . . ." in accordance with § 1325(b)(2)(A) and (B). However, if the debtor's income is above the median family income, the applicable commitment period for the plan is "not less than five years" pursuant to § 1325(b)(4). Further, reasonably necessary expenses are determined in accordance with § 707(b)(2)(A) and (B).

This matter involves the application of Form B22C in the context of confirmation of a Chapter 13 plan proposed by a debtor who earns above the median family income.

## FACTS

On January 5, 2006, the Debtor filed a Chapter 13 petition. The Debtor is married, but his wife is not a debtor in this case. Schedule A lists a time share but no real estate. Schedule B does not list any vehicles. Schedule F lists unsecured debt totaling $116,450.14. The Debtor's Amended Schedule I indicates that the Debtor has three dependents, two minor children and his 74 year-old mother. It also indicates his gross monthly income totals $6,250.00 plus commissions of $4,385.00 and that his

---

[3] That section provides:
For purposes of this subsection, the 'applicable commitment period'--
(A) subject to subparagraph (B), shall be –
    (i) 3 years; or
    (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
        (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
        (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
        (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.
11 U.S.C. § 1325(b)(4)(A) and (B).

spouse is unemployed. Schedule I lists a rent or home mortgage expense of $1,652.00, real estate taxes of $560.00 and automobile installment payments of $487.00 and $352.81.

The Debtor filed an Amended Plan (the "Plan") and Amended Statement of Current Monthly Income ("CMI") on March 6, 2006. The CMI is calculated on Form B22C. Part I of Form B22C indicates that the Debtor's income totals $17,336.17 per month. That number multiplied by 12 (pursuant to § 1325(b)(3)) is otherwise known as the annualized income and totals $208,034.04. This amount exceeds the applicable median family income for a family of five in the State of Illinois.[4] Therefore, the amounts reasonably necessary to be expended under § 1325(b)(2) must be determined pursuant to § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3).

Part IV of Form B22C itemizes the deductions. The Debtor lists deductions totaling $14,818.81. The total expenses deducted from the total income, as calculated on the Debtor's CMI, results in $2,517.36 of disposable income. However, Part VI contains additional expense claims. The Debtor lists an additional $1,317.81 of monthly expenses. Thus, the Plan provides for plan payments of $1,202.00[5] for 60 months. The Plan also indicates under the Special Terms provision that the time share payments will be made outside the Plan by his spouse and her grandmother.

The CMI lists the deductions allowed under § 707(b)(2) using the following amounts:

---

[4] The median family income, as defined in § 101(39A), at the time of filing for a family of five totaled $76,657.00.

[5] The Court notes that the figures set forth on Form B22C do not add up to the proposed plan payment. ($2,517.36 - $1,317.81 = $1,199.55)

| | |
|---|---|
| line 25A: non-mortgage expense | $496.00 |
| Line 25B: mortgage rent expense | $1373.00 |
| line 26: housing adjustment; "To pay mortgage and T&I on residence but title to property in grandmother's name" | $937.00 |
| line 27: operation of 2 vehicles | $422.00 |
| line 59: Other Expenses | |
| a. "Addtnl travel and car repair for job" | $478.00 |
| B. "Car payments in W's name" | $839.81 |

After deducting all expenses claimed by the Debtor, the monthly income totals $1,199.55. However, the amount listed on line 58 titled: Monthly Disposable Income Under § 1325(b)(2) is $2,517.36. Based upon the CMI, the Trustee objects to confirmation on the basis that the Debtor is not using all of his disposable income to fund the Plan.

The Trustee objects to expenses claimed for housing and transportation that exceed the amounts specified in the Local Standards. The Trustee asserts that the amount listed on line 58 equals a debtor's "projected disposable income." The Debtor asserts that the Other Expense amounts for transportation should be included in the calculation of "projected disposable income." In addition, the Debtor claims that additional housing expenses should be allowed in addition to the Local Standard amount.

## DISCUSSION

Numerous issues have arisen since BAPCPA became effective. This Court must determine how to calculate projected disposable income pursuant to § 1325(b)(1)(B) when a debtor earns more than the median family income. Two components must be determined to calculate "projected disposable income" pursuant to § 1325: disposable

income and "amounts reasonably necessary to be expended."

In order to construe what Congress has enacted, "we begin, as always, with the language of the statute." *Duncan v. Walker,* 533 U.S. 167, 172 (2001). "It is our duty to give effect, if possible, to every clause and word of a statute." *Id.* at 174 (quoting *United States v. Menasche,* 348 U.S. 528, 538-39 (1955)) (internal quotations omitted). Moreover, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 173 (quoting *Bates v. United States,* 522 U.S. 23, 29-30 (1997) (internal quotations omitted)); *see also Gildon v. Bowen,* 384 F.3d 883, 886 (7th Cir. 2004).

I.      **Disposable Income**

A plan cannot be confirmed when the trustee objects unless the plan provides that all of the debtor's "projected disposable income" to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. 11 U.S.C. § 1325(b)(1)(A) and (B). For purposes of § 1325(b), the term "disposable income" means current monthly income received by the debtor less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and for charitable contributions. 11 U.S.C. § 1325(b)(2)(A)(i) and (ii). Subparagraph (3) provides: "Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income" greater than the median income. 11 U.S.C.

§ 1325(b)(3).

*In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), is one of the first opinions that addressed this issue. The court held that "projected disposable income" "must be based upon the debtor's anticipated income during the term of the plan, not merely an average of [the debtor's] prepetition income." *Id.* at 722. This Court concurs with the reasoning set forth in support of such an interpretation. *Id.* at 722-23; *see also In re Kibbe*, 342 B.R. 411, 414-15 (Bankr. D.N.H. 2006). Specifically, § 1325(b)(1)(B) refers to "projected disposable income" while subsection (b)(2) defines "disposable income." To equate the terms would be to render the term "projected" superfluous. Even the Supreme Court is "reluctant to treat statutory terms as surplusage in any setting." *Duncan v. Walker*, 533 U.S. at 174 (quoting *Babbitt v. Sweet Home Chapter, Cmtys. for Great Ore.*, 515 U.S. 687, 698 (1994))(internal quotation omitted). Therefore, the term "projected" cannot be disregarded.

Further, as the *Hardacre* court discussed, § 1325(b)(1) also supports such an interpretation. 338 B.R. at 723. A chapter 13 plan must provide for payment of all of the debtor's projected disposable income "to be received in the applicable commitment period." 11 U.S.C. § 1325(b)(1)(B). The applicable commitment period begins on "the date that the first payment is due under the plan . . . ." 11 U.S.C. § 1325(b)(1)(B). In contrast, disposable income is defined as "current monthly income," which in turn is defined as the average monthly income derived during the six-month period ending on the last day of the calendar month *preceding* the date of commencement of the case or the date the current monthly income is determined by the court. 11 U.S.C. § 101(10A)

(emphasis added). "Projected disposable income" cannot, under the plain language of the statute, mean the average monthly income preceding the commencement of the case. Such an interpretation would render the term "projected" meaningless.

Therefore, this Court finds that the term "projected disposable income" must mean something other than the income as computed on Form B22C. Accord *Hardacre*, 338 B.R. at 723; *Kibbe*, 342 B.R. at 414; *Contra In re Jass*, 340 B.R. 411, 416 (Bankr. D. Utah 2006). CMI, as calculated on Form B22C, is defined as the average monthly income earned during the six months prior to the filing of the petition. In contrast, Schedule I sets forth a debtor's income at the time of filing and should be amended when a debtor's income either increases or decreases. Therefore, a debtor's Schedule I, which reflects current income as opposed to a historical average, should be used to determine "projected disposable income."

## II. Amounts Reasonably Necessary to be Expended

The IRS National Standards designate amounts that are reasonable expenditures for five categories: food, clothing, household supplies, personal care, and miscellaneous expenses. The IRS Local Standards designate amounts that are reasonable for housing and transportation. The housing expense includes housing and utilities; the transportation expense includes ownership and operating costs. The standard amounts vary for different areas of the country and are dependent upon a debtor's family size and the number of vehicles.

The Other Necessary Expenses, however, are treated differently. The IRS does not set standard allowances for these expenses. Instead, the IRS "sets out a number

of categories for such expenses, and describes the nature of the expenses that may be deducted in each of these categories." (Form B22 committee note para. C1.) Form B22C includes line items for those categories that do not involve debt repayment and those that are not dealt with more specifically by the Code. The categories specified as Other Necessary Expenses included on Form B22C are: taxes, mandatory payroll deductions, life insurance, court-ordered payments, education for employment or for a physically or mentally challenged child, childcare, health care and telecommunication services. Subpart B of Form B22C lists the six additional specific categories set out in § 707(b). Those categories are: continued contributions to the care of household or family members, protection against family violence, home energy costs in excess of the allowance specified by the IRS Local Standards, education expenses for dependent children less than eighteen years-old, additional food and clothing expense and continued charitable contributions.

Because the Debtor's income exceeds the median family income, the Debtor is required to determine the "amounts reasonably necessary to be expended" pursuant to § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). The first relevant sentence of § 707(b)(2)(A) provides:[6]

---

[6] 11 U.S.C. § 707(b)(2)(A)(ii)(I), in part, provides:
The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. . . . . In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .

11 U.S.C. § 707(b)(2)(A)(ii)(I).[7]

Section 707(b)(2)(A) refers to "actual expenses" numerous times. Subsection (2)(A)(ii) refers to "actual expenses" in regards to: the continuation of care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family and the expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year to attend private or public elementary or secondary school. 11 U.S.C. § 707(b)(2)(A)(ii)(II) and (IV).   However, in reference to the IRS standards the term "actual expenses" refers only to "the categories specified as Other Necessary Expenses . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I).  In contrast, in regards to the National and Local standards, the statute provides that the debtor's monthly expenses "shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards . . . ." *Id.* (emphasis added).

In order to give effect to every word in the statute, the term "actual monthly expenses" cannot be interpreted to mean the same as "applicable monthly expenses." The term "actual monthly expenses" refers to the "categories specified as Other Necessary Expenses issued by the Internal Revenue Service." Therefore, the Debtor's

---

[7]The House Report explained "that the standards referred to in § 707(b)(2)(A)[(ii)] can be found in the Financial Analysis Handbook prepared by the Internal Revenue Service." Eugene R. Wedoff, Means Testing in the New § 707(b), 79 AM. BANKR. L.J. 231, 252-53 (2005) (quoting H.R. Rep. No. 109-31 at 13-14 (2005)).

actual monthly expenses are relevant only for those categories specified as Other Necessary Expenses. Conversely, the term "applicable monthly expenses" under the National and Local Standards means something other than a debtor's "actual monthly expenses." Again, the committee notes to the official forms provide some guidance. "Each of the amounts specified by the IRS in the Local Standards are treated by the IRS as a cap on actual expenses, but because § 707(b)(2)(A)(ii)(I) provides for deduction in the 'amounts specified under the . . . Local Standards,' the forms treat these amounts as allowed deductions." (Form B22 committee note para. C1)(alteration in original).[8] Therefore, this Court finds that the Debtor is allowed to deduct the full amounts listed in the National and Local Standards for the categories of expenses that fall within those standards. This interpretation is consistent with the principle of statutory construction that "[w]hen there is potential for conflict, specific provisions should prevail over the more general." *In re Churchill Props III, Ltd. Part.*, 197 B.R. 283, 288 (Bankr. N.D. Ill. 1996)(quoting *In re Nadler*, 122 B.R. 162, 168 (Bankr. D. Mass. 1990))(internal quotations omitted).

The unique situation in this case is that the Debtor is not liable on the mortgage for the home or the note for the vehicles. Section 707(b)(2)(A)(ii)(I) provides that "the monthly expenses of the debtor shall not include any payments for debts." Therefore, those payments would ordinarily be deducted from the calculation of CMI on lines 47 and 48 to account for payments on secured claims. The full amount of the Local

---

[8] While some courts have referred to the Internal Revenue Manual for guidance (see e.g. Hardacre, 338 B.R. at 726 and McGuire, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006)), this Court will look to the statute. If additional guidance is necessary, the relevant sources to aid in determining legislative intent are the legislative history and comments to the official forms. The comment quoted above supports the principal that the Code must be interpreted independent of the Internal Revenue Manual.

standard amount is reduced by average monthly payments on debts secured by the home. *Hardacre*, 338 B.R. at 727. When the average monthly payment amount exceeds the Local standard, the deduction allowed would be reduced to zero. However, the mortgage payment would be deducted from the actual payments for secured debts. Thus, when a debtor must make payments on secured debts for a home and vehicle, the debtor gets the benefit of the greater of the standard deduction or the average monthly payment amount. *Id.* This Court must determine the proper deductions for housing and transportation expenses by a debtor who is not liable on those debts.

### A. Housing Expense

The Debtor listed the full Local Standard deduction for mortgage/rent expense and for the non-mortgage expense. In addition, for "housing and utilities; adjustment" on line 26, the Debtor includes an additional $937.00 and notes: "to pay mortgage and taxes and insurance on residence but title to property in grandmother's name." The Trustee objects to any additional housing expense to reflect the Debtor's actual expenses.

The Local Standard deduction for housing categorizes the expense as mortgage/rent and specifies only one amount. Therefore, whether or not a debtor is liable on the mortgage is not relevant to determining the proper deduction for the housing expense. As discussed above, a debtor may claim the full Local Standard expense for housing, but may not claim additional expenses based upon actual amounts paid. This is not to say that additional expenses may never be allowed.

Additional housing expenses can be deducted when they are provided for by the IRS standards or the Code. The only IRS category relevant here allows additional deductions for taxes, which includes federal, state and local taxes, but specifically excludes real estate taxes. (Form B22 committee note para C1.) None of the Debtor's additional expenses fall within this category. Similarly, § 707(b) provides for additional housing expenses in excess of the Local Standards.

> [T]he debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

11 U.S.C. § 707(b)(2)(A)(ii)(V). Form B22 provides for this additional expense on line 42. The Debtor does not claim an additional housing expense for home energy costs. There are no other provisions that provide for additional housing expense deductions. Therefore, the Debtor cannot deduct the additional expenses pursuant to the Other Expense Category.

However, the Code allows a debtor to deduct additional expenses irrespective of the category. Section 1325 explicitly references § 707(b)(2)(B),[9] which allows a debtor to demonstrate "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that (sic) justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). In order to do so, the

---

[9] Section 707(b)(2)(B) is to be applied in a Chapter 13 without reference to the presumption of abuse. See In re Renicker, 342 B.R. 304, 310 (Bankr. W.D. Mo. 2006).

debtor is required to itemize, document and provide a detailed explanation of the special circumstances that renders them necessary and reasonable. 11 U.S.C. § 707(b)(2)(B)(ii)(I) and (II). Further, the debtor must attest under oath to the information provided. 11 U.S.C. § 707(b)(2)(B)(iii).

The Debtor has not provided any such documentation or explanation. This alone justifies sustaining the Trustee's objection. *Accord In re Renicker*, 342 B.R. 304, 310 (Bankr. W.D. Mo. 2006). However, the Court will not at this time foreclose the Debtor's opportunity to demonstrate special circumstances in the future. Because the Debtor may not claim additional expenses for housing above and beyond the amounts specified in the Local Standards or otherwise explicitly authorized by § 707(b)(2), and the Debtor failed to document and explain any special circumstances, the Trustee's objection to confirmation based upon the additional $937.00 housing expense is sustained.

### B. Transportation

The Debtor includes additional "travel and car repair for job" at $478.00 per month and "car payments in wife's name" for $839.81 per month as "Other Expenses" on line 59. The Debtor included the Local Standard deduction for the operation of two vehicles on line 27 in the amount of $422.00. The Trustee objects to deducting both expenses claimed by the Debtor as "Other Expenses."

First, as explained above, expenses for transportation should be limited to those categories specifically related to transportation. Otherwise, any additional expenses must fall within the § 707(b)(2)(B) exception for special circumstances. The Debtor in

this case, however, did not include a transportation ownership/lease expense because he does not own or lease the vehicles.[10] However, the Debtor is the primary user of that vehicle and in fact makes the monthly payment for that vehicle.[11]

First, this Court must look to the language of the statute. "A court's first obligation when construing the meaning of a law enacted by Congress is to consider the statutory language itself." *Newsom v. Friedman*, 813 F.3d 813, 816 (7th Cir. 1996) (citing cases). "A court may examine legislative history when it encounters language in a statute that is undeniably ambiguous, but it should be the final option." *Id.* Additionally, "the plain meaning of a statute should be conclusive except in those cases where the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *In re Hardacre*, 338 B.R. at 725 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989))(internal quotations omitted).

Section 707(b)(2) provides, in relevant part: "the debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the . . . Local Standards . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I). One court interpreted this statute provision to mean that the debtor's applicable monthly expenses shall be the amount specified in the Local Standards. *In re McGuire*, 342 B.R. at 613. The court explained that "if a debtor does not own or lease a vehicle, the ownership expense is not

---

[10] Section 707(b) includes expenses of the debtor's spouse "in a joint case, if the spouse is not otherwise a dependent." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Trustee did not object to the expenses for the non-debtor spouse's transportation expenses. Therefore, this Court will not determine at this time whether such an expense is proper.

[11] The Trustee does not raise an objection based upon good faith pursuant to § 1325(a)(3). Therefore, this Court will not determe whether a debtor who proposes to pay secured creditors of his non-filing spouse and proposes to pay no secured debt through his individual Chapter 13 plan has proposed the plan in good faith.

'applicable' to that debtor." *Id.* The court went on to conclude that "if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS standards." *Id. Contra* Wedoff, 79 Am. Bankr. L.J. at 257-58 (stating that "since the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments.")

This Court finds the reasoning in *McGuire* persuasive. Unlike the debtor in that case, however, the Debtor incurs a monthly expense for ownership. While the Debtor is not obligated under the note, he does incur the expense to use the vehicle.[12] Therefore, the Debtor can claim the Local Standard for transportation ownership/lease expense in addition to the transportation operation expense. Because those expenses were improperly included as Other Necessary Expenses, however, the Trustee's objection will be sustained.

## CONCLUSION

This Court finds that in order to given meaning to the term "projected" a historical average of income, as contained on Form B22C cannot be used to determine "projected disposable income" pursuant to § 1325(b)(1)(B). But instead, Schedule I should be used. In order to determine the proper expenses to be deducted from projected income, the Debtor is allowed to take the full National and Local Standard

---

[12] The creditor in this case has not raised an objection to confirmation of the Debtor's Plan. See *In re Flores*, Case no. 06-2169 decided on July 20, 2006 by Judge Jacqueline P. Cox for a discussion of the treatment of a mortgage when the wife did not execute the note and the creditor objected to confirmation of the plan.

amounts. Additional expenses for the categories specified by the IRS are only proper if they fall within the additional expense provisions as specified by the IRS or as defined in the Code. In order to claim Other Necessary Expenses, the Debtor must itemize, document and provide a detailed explanation of the special circumstances that render those expenses reasonable and necessary. Because the Debtor did not take the proper deductions from his projected income as detailed above, the Trustee's objection to confirmation is sustained.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate judgment will be entered giving effect to the determinations reached herein.

Signed: July 31, 2006

MANUEL BARBOSA
United States Bankruptcy Judge